## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARCUS B. GOSWICK, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| EXPERIAN INFORMATION SOLUTIONS, | ) | |
| INC., CCS NATIONAL LLC (d/b/a CREDIT | ) | |
| COLLECTION SERVICES), NATIONAL | ) | Civil Action No.: 22-CV-1204 |
| CREDIT SYSTEMS, INC., NEWREZ LLC | ) | |
| d/b/a SHELLPOINT MORTGAGE | ) | |
| SERVICING, FAIR COLLECTIONS & | ) | |
| OUTSOURCING, INC. PROCOLLECT, | ) | |
| INC., AMLI RESIDENTIAL PROPERTIES, | ) | |
| L.P., GREYSTAR GP, L.L.C., and LIBERTY | ) | |
| MUTUAL GROUP, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

MARCUS B. GOSWICK ("Plaintiff") brings this action on behalf of himself against defendants EQUIFAX INFORMATION SERVICES LLC ("Equifax"), EXPERIAN INFORMATION SOLUTINS, INC. ("Experian") (the "Credit Bureau Defendants"), NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("Shellpoint") (the "Furnisher Defendant"), CCS NATIONAL LLC (d/b/a CREDIT COLLECTION SERVICES) ("CCS"), NATIONAL CREDIT SYSTEMS, INC. ("NCS"), FAIR COLLECTIONS & OUTSOURCING, INC. ("FCO"), PROCOLLECT, INC. ("ProCollect") (the "Debt Collector Defendants"), AMLI RESIDENTIAL PROPERTIES, L.P. ("AMLI"), GREYSTAR GP, L.L.C. ("Greystar"), and LIBERTY MUTUAL GROUP, INC. ("Liberty"), (the "Original Creditor Defendants") (all collectively, "Defendants") as follows:

1

## PRELIMINARY STATEMENT

1.      Twenty-three million people are victims of identity theft each year.[1] Plaintiff is a victim of Identity theft.

2.      In 2020, Plaintiff first learned that he'd had his identity stolen. Someone fraudulently used his identity to purchase furniture with a company called Conn's HomePlus. Plaintiff filed a police report and was able to work with Conn's HomePlus to close out the fraudulent account.

3.      The good news is that the system worked like it should have for most of the fraudulent activity and credit reporting issues. Plaintiff has been playing whack-a-mole with various fraudulent accounts and collections showing up on his credit reports or in his mailbox. Over the last 2+ years, Plaintiff has filed several FTC Identity Theft affidavits and police reports. Through his hard work and perseverance Plaintiff has been able to rectify many of the issues. In another example, Trans Union removed every fraudulent account that showed up on Plaintiff's credit report after Plaintiff submitted proof the accounts were not his. There have been several other creditors and debt collectors who have properly closed accounts and stopped reporting to Plaintiff's credit reports.

4.      Unfortunately, however, the defendants named in this action failed to perform reasonable investigations or take their role in the damages caused to Plaintiff seriously making this litigation necessary.

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. April 2021, NCJ 256085.

5.     For example, unlike TransUnion, Experian and Equifax have not appropriately investigated Plaintiff's disputes and removed fraudulent accounts and collections from his credit reports. Similarly, CCS, NCS, Shellpoint, FCO and ProCollect have continued to report false information to the credit reporting agencies and/or are attempting to collect on debts not owed by Plaintiff. The filing of this lawsuit is Plaintiff's only remaining alternative to get his credit back to the way it should be and to stop the harassment he is enduring from debt collectors.

6.     Consequently, Plaintiff brings this action against Defendants for damages resulting from their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392. *et seq.*, ("TDCA").

7.     "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681 (a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681 (a)(3). "There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right of privacy." 15 U.S.C. § 1681 (a)(4).

8.     Consumer reporting agencies are to "[]adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other

information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information …" 15 U.S.C. § 1681 (b).

9.    The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The statute provides for civil liability for a wide range of abusive actions, including, but not limited to, the false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

10.    Similarly, the Texas Legislature "passed the [Texas] Debt Collection Act to prevent creditors from preying on a consumer's fears and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).

11.    Defendants' have failed their grave responsibilities of fairness, impartiality, and a respect for Plaintiff's right of privacy, which failures are causing damage to Plaintiff.

12.    Plaintiff also seeks to enforce those policies and civil rights which are expressed through the TDCA and FDCPA. The TDCA and FDCPA encourage consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Young v. Asset Acceptance, LLC, Civil Action*, No.:3:09-CV-2477-BH, 2011 WL 618274, *2 (N.D. Tex. 2011). Over one-third of debt collection complaints to the CFPB are about attempts **to collect a debt that is not owed** as

is the case here. *Fair Debt Collection Practices Act—CFPB Annual Report 2015* at 13 (2015).[2]

## JURISDICTION & VENUE

13.     Jurisdiction is proper under 28 U.S.C. § 1331, ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…") and 15 U.S.C. § 1692k (FDCPA) (An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, ...") and 15 U.S.C. §1681p (FCRA).

14.     The Court also has supplemental jurisdiction over the TDCA claims under 28 U.S.C. § 1367.

15.     Venue is proper in this judicial district because Defendants engaged in the complained of acts in this district. 28 U.S.C. § 1391(b) ("A civil action may be brought in— (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ..."). Also, Plaintiff resides in this district and a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

---

[2] http://files.consumerfinance.gov/f/201503_cfpb_fair-debt-collection-practices-act.pdf (last visited November 2, 2022).

## PARTIES

16.     Plaintiff is a natural person who resides in Comal County, Texas.

17.     Plaintiff also is a "consumer" as defined in both the FDCPA and TDCA. *See* 15 U.S.C. § 1692a(3) and Tex. Fin. Code Ann. §§ 392.001(1) & 392.001(2), respectively.

18.     Plaintiff is also a consumer as defined by the FCRA, 15 U.S.C. §1681a(c): "an individual."

### Credit Bureaus

19.     Equifax is a corporation with its principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax's registered agent is Corporation Service Company, 211 E. 7th Street, Suite 620 Austin, TX 78707.

20.     Equifax is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

21.     Experian is a corporation with its principal place of business located in Costa Mesa, California. Experian's registered agent is C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

22.     Experian is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

**Furnisher Only Defendant**

23.     Shellpoint is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Shellpoint's registered agent is CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

**Debt Collector Defendants**

24.     CCS is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). CCS's principal place of business is located at 725 Canton Street, Norwood, MA 05062. CCS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of CCS's business. CCS National LLC is a Texas registered debt collector and is also bonded in Texas through Travelers Casualty and Surety Company of America (File #20100287; Bond #: 0105511324 S).

25.     NCS is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). NCS is headquartered at 3750 Naturally Fresh Blvd., Atlanta, Georgia 30349. NCS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. NCS's registered agent is C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201. Debt collection is the principal purpose of NCS's business. NCS is a Texas registered debt collector and is also bonded in Texas through Old Republic Surety Company (File #20180040; Bond #:2530628).

26.    FCO is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively, with its offices located at 12304 Baltimore Ave., Suite #E, Beltsville, Maryland 20705. FCO's registered agent is CSC-Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. Debt collection is the principal purpose of FCO's business. FCO is a Texas registered debt collector and is also bonded in Texas through Harco National insurance Company (File #20050069 Bond #:0398984).

27.    ProCollect is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively, which is headquartered at 12170 N. Abrams Rd, Suite 100, Dallas, Texas 75243. ProCollect's registered agent is John W. Bowdich, located at 8150 N. Central Expy., Suite 500, Dallas, TX 75206. Debt collection is the principal purpose of ProCollect's business. ProCollect is a Texas registered debt collector and is also bonded in Texas through Western Insurance Company (File #20050228; Bond #:69813436).

**Original Creditor Defendants**

28.    The original creditor defendants below hired the debt collector defendants to help them collect the various debts at issue here described in the details below. They are "creditors" under the TDCA. A "Creditor means a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." Tex. Fin. Code Ann. § 392.001(3). "'Debt collection' means an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code Ann. § 392.001(5).

29.    On information and belief, AMLI Residential Properties, L.P. ("AMLI") is located at 3424 Peachtree Rd. NE, Suite 900, Atlanta GA 30326. AMLI owns and operates the apartment complex doing business under the name "AMLI Uptown" which is located at 2525 McCue Road, Houston, Texas 77056. AMLI hired NCO to collect the debt related to a bogus AMLI Uptown lease. AMLI's registered agent is CT Corporation located at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

30.    On information and belief, Greystar GP, L.L.C. ("Greystar") is located at 11 State Street Charleston, SC 29401. Greystar owns and operates the apartment complex doing business under the name doing business under the name "Eighteen25 Downtown" which is located at 1825 San Jacinto Street, Houston, Texas 77002. Greystar hired NCO to collect the debt related to a bogus Eighteen25 Downtown lease. Greystar's registered agent is CT Corporation located at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

31.    On information and belief, Liberty Mutual Group, Inc. ("Liberty") is located 175 Berkeley Street, Boston, MA 02116. Liberty is the owner of an insurance related account with the account number: ABT-291-984192-4521 which is the result of identity theft. Liberty hired CCS to collect this bogus debt from Plaintiff. Liberty's registered agent is Corporation Service Company, d/b/a CSC Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin Texas 78701-3218.

32.    All Defendants regularly conduct business in Texas.

## FACTS

**A.    Identity theft issues Plaintiff has experienced over the last 2 years.**

33.    Plaintiff is unsure how his identity was stolen. Plaintiff first learned of

the identity theft in 2020 and more than 2 years later is still working to clear fraudulent accounts from his credit reports.

34.     Plaintiff has taken innumerable steps to try and combat the false reporting that has resulted from the theft of his identity, including the below police reports and Identity Theft Reports over the last 2 years:

- June 2020: Police report and Identity Theft Victim's complaint and affidavit relating to a fraudulent Conn's HomePlus account that Plaintiff discovered on his credit reports;

- October 14, 2020: Police report relating to two fraudulent Texas Dow Employee Credit Union accounts that were fraudulently opened in Plaintiff's name;

- January 10, 2021: Police report relating to a Hunter Warfield collection that Plaintiff discovered on his credit reports stemming from a fraudulent apartment lease in his name at Gables Post Oak Apartments;

- January 10, 2021: FTC Identity Theft Report relating to a Southern Management Systems collection Plaintiff discovered on his credit reports stemming from a fraudulent lease in his name at Co-op Med Center Apartments;

- January 10, 2021: Police Report relating to a Southern Management Systems collection Plaintiff discovered on his credit reports that stemmed from a fraudulent lease in his name at Co-op Med Center Apartment;

- January 10, 2021: Police Report relating to a National Credit System collection Plaintiff discovered on his credit reports that stemmed from a fraudulent lease in his name at Eighteen25 Downtown Apartments in Houston, TX;

- March 22, 2022: FTC Identify Theft Report relating to a ProCollect, Inc.  collection Plaintiff discovered on his credit reports that stemmed from a fraudulent apartment lease in his name at The District at Windy Hills APA;

- March 22, 2022: FTC Identity Theft Report relating to a Fair

> Collections & Outsourcing collection Plaintiff discovered on his credit reports that stemmed from a fraudulent apartment lease in his name at Amli Upton residential apartments; and

- July 29, 2022: FTC Identity Theft Report relating to a Credit Collection Services collection Plaintiff discovered on his credit reports that stemmed from a fraudulent Liberty Mutual charge.

35.   Through a lot of perseverance, expense, and emotional distress much of the above has been closed out and removed from Plaintiff's credit reports. However, several fraudulent items remain and even with regard to some that were ultimately removed, their removal did not occur in any reasonable or timely fashion, such that these items also provide the basis for violations of the FCRA, the FDCPA and the TDCA.

**B.   Facts related to the Fair Credit Reporting Act claims.**

     **a.   January 2021 disputes to Equifax, Experian, and Trans Union.**

36.   In late 2020/early 2021 Plaintiff discovered two collections on his credit reports that did not belong to him. An NCS collection in which the original creditor was Eighteen 25 Downtown Apartments in Houston, TX, and a Hunter Warfield collection in which the original creditor was Gables Post Oak Apartments. Both collections stemmed from fraudulent apartment leases.

37.   On January 10, 2021, Plaintiff filed police reports about both fraudulent apartment leases.

38.   On January 13, 2021, Plaintiff sent dispute letters—via certified mail—to Equifax, Experian, and Trans Union informing those credit reporting agencies that

those collections are a result of identity theft. As proof of his assertions, Plaintiff included the two police reports with his dispute letters.

39.    On information and belief Equifax, Experian, and Trans Union forwarded Plaintiff's certified dispute letters to both NCS and to Hunter Warfield for investigation pursuant to the requirements under the FCRA.

40.    Equifax never responded to Plaintiff's dispute and on Plaintiff's February 15, 2021 Equifax credit report both the NCS collection and the Hunter Warfield collection remained in place. Plaintiff then tried to access his Equifax credit report on April 16, 2021, but Equifax was not reporting any accounts for Plaintiff and his Equifax credit score was 0. Plaintiff again tried to access his Equifax credit report on May 18, 2021, but Equifax was still not reporting any accounts for Plaintiff and his Equifax credit score was still 0. Plaintiff then accessed his Equifax credit report on December 13, 2021 at which time Equifax was, again, reporting Plaintiff's accounts. The Hunter Warfield collection was removed; however, the NCS collection reappeared on Plaintiff's report.

41.    Experian responded to Plaintiff's dispute on February 11, 2021 telling Plaintiff that the projected completion date of Experian's investigation was March 9, 2021. Plaintiff never received investigation results on or after the March 9, 2021 date set by Experian. Plaintiff accessed his Experian credit report on April 16, 2021 and the NCS collection was still on Plaintiff's report.

42.    Trans Union timely responded to Plaintiff's dispute and removed the fraudulent information from Plaintiff's Trans Union credit report.

**b.    December 2021 disputes to Equifax and Experian.**

43.    Because the NCS collection that stemmed from a fraudulent apartment lease was still on Plaintiff's Equifax and Experian credit reports, on December 15, 2021 Plaintiff sent another round of dispute letters to both Equifax and Experian via certified mail. As proof that the NCS collection was false, Plaintiff again included the police report that concerned the NCS collection.

44.    On information and belief, Equifax and Experian forwarded Plaintiff's certified dispute letters to NCS for investigation pursuant to the requirements under the FCRA.

45.    On January 6, 2022 Equifax verified the fraudulent NCS collection as correctly reporting to Plaintiff's credit report.

46.    On January 7, 2022 Experian responded to Plaintiff by stating that the projected completion date of Experian's investigation was February 3, 2022. Plaintiff never received a response on or after February 3, 2022 from Experian. Plaintiff accessed his Experian credit report on March 16, 2022 at which time Experian was still reporting the fraudulent NCS collection.

**c.    March 2022 disputes to Equifax and Experian.**

47.    Plaintiff's Equifax dispute letter was delivered to Equifax on March 26, 2022 via certified mail; tracking number 9407 1118 9876 5841 8096 71. Plaintiff, again, disputed the NCS collection and included the same police report. As of March of 2022, Plaintiff's Equifax credit report also reported a collection from Pro Collect, Inc. stemming from a fraudulent apartment lease at The District At Windy Hill Apartments. Plaintiff filed an FTC Identity Theft affidavit on March 22, 2022 relating

to that fraud. As proof that the tradeline was false, Plaintiff included the March 22, 2022 FTC Identity Theft affidavit in his dispute letter to Equifax.

48.    On information and belief, Equifax forwarded Plaintiff's dispute letter to both NCS and Pro Collect, Inc. pursuant to the requirements of the FCRA. However, Plaintiff never received a response from Equifax.

49.    On April 27, 2022 (more than 30 days after Equifax received Plaintiff's dispute letter) Plaintiff received a debt collection letter from Pro Collect for $6,031.85 owed as a result of the fraudulent apartment lease. Presumably, this letter was sent in response to Plaintiff's dispute letters.

50.    Plaintiff then received a letter dated June 6, 2022 from Pro Collect that "this account has been canceled in our office as a collection item, we have requested that it be removed from the credit bureaus and we have returned the file back to the original creditor."

51.    Plaintiff did not access his Equifax credit report until June 22, 2022. On that report, Equifax was no longer reporting either the NCS collection or the Pro Collect collection.

52.    Plaintiff's Experian dispute letter was received by Experian on March 24, 2022; tracking number 9407 1118 9876 5841 8091 14. Plaintiff, again, disputed the NCS collection and included the same police report. Now, Plaintiff's Experian credit report also reported a collection from Pro Collect, Inc. stemming from a fraudulent apartment lease at The District At Windy Hill Apartments. Plaintiff filed an FTC Identity Theft affidavit on March 22, 2022 relating to that fraud. Plaintiff

included the March 22, 2022 FTC Identity Theft affidavit in his dispute letter to Equifax. Finally, Plaintiff noticed that Shellpoint was reporting a balance due of $219,673 with a monthly payment of $2,922. Those were errors, as Plaintiff had paid off the Shellpoint mortgage in May 2020. This was an error unique to Plaintiff's Experian credit report, because Equifax and Trans Union correctly showed the account as closed with $0 due and $0 due per month.

53.    On information and belief, Experian forwarded Plaintiff's dispute letter to NCS, Pro Collect, Inc., and Shellpoint pursuant to the requirements of the FCRA. However, Plaintiff never received a response from Experian.

54.    Plaintiff did not access his Experian credit report until July 10, 2022. On that report, Experian was no longer reporting the Pro Collect collection. Experian, however, was still erroneously reporting the Shellpoint balance and was still reporting the fraudulent NCS collection.

### d.    April 2022 disputes to Equifax, Experian, and Trans Union

55.    Plaintiff sent disputes to all three CRAs in April of 2022.

56.    Plaintiff's Equifax dispute was received by Equifax on May 1, 2022; tracking number 9407 1118 9876 5875 9893 94. Plaintiff disputed three collections that stemmed from a fraudulent apartment lease: Fair Collections & Outsourcing collection ("FCO") stemming from a fraudulent apartment lease at AMLI Uptown apartments; NCS collection stemming from a fraudulent apartment lease at Eighteen25 Downtown apartments; and Pro Collect collection stemming from a fraudulent apartment lease at The District at Windy Hill apartments. Plaintiff included police reports and FTC Identity Theft affidavits that addressed each

fraudulent apartment lease.

57.    On information and belief, Equifax forwarded Plaintiff's dispute to FCO, NCS and Pro Collect as required by the FCRA.

58.    Plaintiff never received a response from Equifax about this dispute.

59.    Plaintiff did not access his Equifax credit report until July 10, 2022. On that credit report, Equifax was no longer reporting the FCO collection, NCS collection, or Pro Collect collection.

60.    Plaintiff's Experian dispute was received by Experian on May 2, 2022; tracking number 9407 1118 9876 5875 9875 29. Plaintiff disputed the same three collections that were on his Equifax credit report: FCO collection stemming from a fraudulent apartment lease at AMLI Uptown apartments; NCS collection stemming from a fraudulent apartment lease at Eighteen25 Downtown apartments; and Pro Collect collection stemming from a fraudulent apartment lease at The District At Windy Hill apartments. Plaintiff included police reports and FTC Identity Theft affidavits that addressed each fraudulent apartment lease.

61.    On information and belief, Experian forwarded Plaintiff's dispute to FCO, NCS and Pro Collect as required by the FCRA.

62.    Plaintiff, however, never received a response from Experian about this dispute.

63.    Plaintiff did not access his Experian credit report until July 10, 2022. On that credit report, Experian was no longer reporting the Pro Collect collection or the FCO collection. But it was still erroneously reporting the fraudulent NCS

collection.

64.    Plaintiff's Trans Union dispute was received by Trans Union on May 7, 2022; tracking 9407 1118 9876 5875 9812 51. Plaintiff disputed the FCO collection that stemmed from the AMLI Uptown fraudulent apartment lease.

65.    On information and belief, Trans Union forwarded Plaintiff's dispute to FCO as it is required to do pursuant to the FCRA.

66.    Plaintiff received Trans Union's May 16, 2022 response in which Trans Union deleted the fraudulent collection from Plaintiff's Trans Union credit report.

**e.    July 2022 disputes to Equifax, Experian, and Trans Union.**

67.    Plaintiff's Equifax dispute was received by Equifax on July 24, 2022; tracking 9407 1118 9876 5876 6619 61. Plaintiff disputed a collection from CCS that stemmed from a fraudulent Liberty Mutual debt that did not belong to Plaintiff. In the dispute Plaintiff enclosed an FTC Identity Theft Affidavit report about the fraudulent Liberty Mutual account.

68.    On information and belief, Equifax forwarded Plaintiff's dispute to CCS as required under the FCRA.

69.    Plaintiff received Equifax's August 16, 2022 response in which it indicated it would delete the fraudulent CCS collection from Equifax's credit report. But Plaintiff accessed his Equifax credit report on September 29, 2022 and the fraudulent CCS collection was still reporting.

70.    Plaintiff's Experian dispute was received by Experian on July 26, 2022; tracking number 9407 1118 9876 5876 6611 21. Plaintiff disputed a new collection

17

from CCS that stemmed from a fraudulent Liberty Mutual debt that did not belong to Plaintiff. Plaintiff also disputed, again, the Shellpoint mortgage erroneously reporting a $219,000 balance and a $2,922 monthly payment on an account that was paid off in May 2020. Plaintiff also disputed the NCS collection—for a fifth time— that stemmed from the fraudulent apartment lease at Eighteen25 Downtown apartments.

71.    On information and belief, Experian forwarded Plaintiff's dispute to CCS, Shellpoint, and NCS as required under the FCRA.

72.    Plaintiff did not receive a response from Experian.

73.    On September 29, 2022, Plaintiff accessed his Experian credit report. The fraudulent CCS collection was removed, however the erroneous Shellpoint balance and monthly payment remained, as did the erroneous NCS collection.

74.    Plaintiff sent a dispute letter to Trans Union addressing the new fraudulent CCS collection. Plaintiff received Trans Union's July 28, 2022 response in which it agreed to delete the fraudulent collection. On the September 29, 2022 Trans Union credit report, Trans Union was no longer reporting the CCS collection.

## C.    Facts related to the Fair Debt Collection Practices Act and Texas Debt Collection Act claims.

### a.    National Credit Systems, Inc.

75.    Plaintiff first noticed that NCS was reporting a false collection on his credit reports in January 2021. At that time, NCS was reporting to Equifax, Experian, and Trans Union false information that Plaintiff owed a collection that stemmed from a fraudulent lease at Eighteen25 Downtown apartments.

76.    Plaintiff obtained a police report about that fraud and has since written to NCS about that fraud many times.

77.    On February 15, 2021, NCS was reporting the false NCS collection on Plaintiff's Equifax and Experian credit reports.

78.    On April 16, 2021, NCS was reporting the false NCS collection on Plaintiff's Experian credit report.

79.    On May 18, 2021, NCS was reporting the false NCS collection on Plaintiff's Experian credit report.

80.    On December 13, 2021, NCS was reporting the false NCS collection on Plaintiff's Equifax and Experian credit reports.

81.    On January 20, 2022, NCS was reporting the false NCS collection on Plaintiff's Equifax and Experian credit reports.

82.    On March 16, 2022, NCS was reporting the false NCS collection on Plaintiff's Equifax and Experian credit reports.

83.    On April 1, 2022, NCS was reporting the false NCS collection on Plaintiff's Experian credit report.

84.    On July 10, 2022, NCS was reporting the false NCS collection on Plaintiff's Experian credit report.

85.    On September 29, 2022 NCS was reporting the false NCS collection on Plaintiff's Experian credit report.

### b.    Credit Collection Services

86.    Plaintiff received a debt collection letter from CCS dated February 16,

2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

87.   Plaintiff received a debt collection letter from CCS dated March 26, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

88.   Plaintiff received a debt collection letter from CCS dated April 16, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

89.   Plaintiff received a debt collection letter from CCS dated March 26, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

90.   Plaintiff received a debt collection letter from CCS dated May 14, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

91.   Plaintiff received a debt collection letter from CCS dated May 17, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

92.   Plaintiff received a debt collection letter from CCS dated June 28, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent Liberty Mutual account that did not belong to Plaintiff.

93.   On July 10, 2022, CCS was reporting the false CCS collection on Plaintiff's Equifax, Experian, and Trans Union credit reports.

94.     On September 29, 2022, CCS was reporting the false CCS collection on Plaintiff's Equifax credit report.

### c.    Pro Collect Inc.

95.     Plaintiff received a debt collection letter from Pro Collect, Inc. dated April 27, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent lease agreement at The District At Windy Hill Apartments that did not belong to Plaintiff.

96.     On March 16, 2022, Pro Collect, Inc. was reporting the false collection on Plaintiff's Experian and Equifax credit reports.

97.     On April 1, 2022, Pro Collect, Inc. was reporting the false collection on Plaintiff's Experian credit report.

### d.    Fair Collections & Outsourcing

98.     Plaintiff received a debt collection letter from FCO dated July 26, 2021 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent lease agreement at AMLI Uptown residential apartments that did not belong to Plaintiff.

99.     Plaintiff received a debt collection letter from FCO dated February 2, 2022 that attempted to collect a debt that Plaintiff did not owe as it stemmed from a fraudulent lease agreement at AMLI Uptown residential apartments that did not belong to Plaintiff.

100.    On April 1, 2022, FCO was reporting the false collection on Plaintiff's Experian credit report.

**D.      Debt Collector Defendants and Original Creditor's Illegal Credit Pulls or Tenant Background Checks**

101.   The FCRA prohibits any person from obtaining a consumer report unless that person has either consumer authorization or a permissible purpose for procuring the report and certifies such purpose to the consumer reporting agency.  15 U.S.C. § 1681b(f).

102.   The Act sets forth a list of permissible purposes for obtaining a consumer's report.  15 U.S.C. § 1681b.

103.   Under 15 U.S.C. § 1681b(a)(3), someone has a permissible purpose to obtain a consumer report when they "intend to use the information in connection with a credit transaction involving the consumer […or…] in connection with the underwriting of insurance involving the consumer [.]"

104.   15 U.S.C. § 1681b(a) does not permit anyone to obtain consumer reports of identity theft victims who have not applied for accounts or insurance or who are not liable on accounts or associated with an insurance policy.

105.   Someone who obtains a consumer report of an identity theft victim who has not applied for an account or insurance or is not liable on an account or associated with an insurance policy violates 15 U.S.C. § 1681b(f), unless the victim has authorized release of the consumer report. Here, there was no authorized release to the Debt Collector Defendants or Original Creditor Defendants.

**E.**     **Defendants' actions have damaged Plaintiff.**

106.    The Defendants' actions have damaged Plaintiff financially. In addition, Defendants' actions have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, and emotional distress.

107.    As a direct result of the fraudulent collections contained in Plaintiff's credit reports, Plaintiff was twice denied a loan to purchase a boat.

108.    On April 10, 2022, Bank of the West BNP Paribas denied Plaintiff a loan after pulling Plaintiff's Experian credit report on April 4, 2002. The reasons offered Plaintiff for why his loan were denied include: derogatory collection filed, time since derogatory collection is too short, and too few accounts currently paid as agreed.

109.    On April 1, 2022, Plaintiff's Experian credit report contained the following fraudulent collections: FCO, NCS, and Pro Collect. Prior to April 1, 2022 Plaintiff had disputed the NCS collection three times with Experian and the Pro Collect collection with Experian one time.

110.    Also on April 10, 2022, Fifth Third Bank denied Plaintiff a loan after pulling Plaintiff's Trans Union credit report on April 4, 2022. The reasons offered Plaintiff for why his loan were denied include: derogatory collection filed, time since derogatory collection is too short, too few accounts currently paid as agreed, number of accounts with delinquency.

111.    On April 1, 2022, Plaintiff's Trans Union credit report contained the fraudulent FCO collection.

112.    Defendants' actions have also violated Plaintiff's privacy as they have published these errors to third parties many times over the last 2 years.

113.    Plaintiff has suffered damages proximately caused by the conduct of Defendants, including:

i.      Emotional distress, damage to reputation, humiliation, guilt, stress, anxiety, frustration, mental pain, anguish, distress, and loss of focus and production;

ii.     Time and expense of pulling/reviewing credit reports and meeting with professionals about how to best proceed;

iii.    Believing that the erroneous accounts may continue to be reported inaccurately and misleadingly through no fault of Plaintiff's and have a chilling effect on ability to obtain credit;

iv.     Adverse information on credit reports and a negative impact to credit rating;

v.      An inability to improve credit scores during the dispute process;

vi.     An inability to qualify for financing;

vii.    Invasion of privacy;

viii.   A lower credit score; and

ix.     Having to hire attorneys to combat the improper credit reporting.

**Count I – Equifax and Experian ("Credit Bureau Defendants")**
**FCRA §§ 1681e(b) and 1681i**

114.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

115.    A "consumer reporting agency" is defined by the FCRA as follows:

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of

24

furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

116.   Equifax and Experian are both consumer reporting agencies as defined by Section 1681a(f) of the FCRA.

117.   Equifax and Experian violated 15 U.S.C. § 1681e(b) by its conduct, acts, and omissions in failing to establish or to follow reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff in the preparation and publication of Plaintiff's consumer reports.

118.   Equifax and Experian violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions, including, but not limited to, the following:

a.   failing to (i) conduct a reasonable reinvestigations of Plaintiff's five disputes concerning all items of information that Plaintiff disputed, and (ii) record the correct statuses of the disputed information or delete the disputed information from Plaintiff's credit file, in violation of § 1681i(a)(1);

b.   failing to delete the erroneous items from Plaintiff's credit file within the 30-day period of receiving Plaintiff's dispute, in violation of § 1681i(a)(1);

c.   failing to provide Plaintiff's disputes to the companies that provided the information to Equifax within 5 business days, in violation of § 1681i(a)(2);

d. failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's disputes, in violation of § 1681i(a)(4); and

e. failing to properly delete items of disputed information from Plaintiff's credit file that Equifax could not have verified upon a lawful reinvestigation in violation of § 1681i(a)(5).

119.    These violations of §§ 1681e(b) and 1681i were willful, rendering Equifax and Experian liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

120.    In the alternative, Equifax and Experian's violations of §§ 1681e(b) and 1681i were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.    Enter judgment in Plaintiff's favor and against all Equifax and Experian, jointly and severally;

b.    Appropriate statutory penalties for each violation of the FCRA;

c.    Actual damages;

d.    Punitive damages;

e.    Reasonable attorney's fees and the costs of this litigation;

f.    Pre-judgment and post-judgment interest at the legal rate;

g.    Appropriate equitable relief, including the correction of Plaintiff's credit reports; and

h.    Such other relief as the Court deems equitable, just, and proper.

## Count II– NCS
## FCRA—Failure to investigate

121.    Plaintiff incorporates the paragraphs prior to Count I as though fully set forth herein.

122.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after NCS receives notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [NCSS] shall conduct an investigation with respect to the disputed information."

123.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after NCS receives notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [NCS] shall review all relevant information provided by the consumer reporting agency…"

124.    NCS failed to fully and properly investigate nine of Plaintiff's disputes relating to a collection that stemmed from identity theft.

125.    NCS failed to review all relevant information provided by Equifax, Experian, or Trans Union relating to Plaintiff's many disputes.

126.    NCS's conduct, action, and inaction was willful, or, in the alternative, negligent.

127.    Plaintiff suffered embarrassment, humiliation, and emotional distress because of NCS's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.     Enter judgment in Plaintiff's favor and against NCS;
b.    Appropriate statutory penalties for each violation of the FCRA;
c.    Actual damages;
d.    Punitive damages;

e.   Reasonable attorney's fees and the costs of this litigation;
f.   Pre-judgment and post-judgment interest at the legal rate;
g.   Appropriate equitable relief, including the correction of Plaintiff's credit reports; and
h.   Such other relief as the Court deems equitable, just, and proper.

## Count III– Shellpoint
## FCRA—Failure to investigate

128.    Plaintiff incorporates the paragraphs prior to Count I as though fully set forth herein.

129.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after Shellpoint receives notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [Shellpoint] shall conduct an investigation with respect to the disputed information."

130.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after Shellpoint receives notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [Shellpoint] shall review all relevant information provided by the consumer reporting agency…"

131.    Shellpoint failed to fully and properly investigate two of Plaintiff's disputes relating to erroneous reporting of Plaintiff's mortgage.

132.    Shellpoint failed to review all relevant information provided by Experian relating to Plaintiff's disputes.

133.    Shellpoint 's conduct, action, and inaction was willful, or, in the alternative, negligent.

134.    Plaintiff suffered embarrassment, humiliation, and emotional distress because of Shellpoint's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.    Enter judgment in Plaintiff's favor and against Shellpoint;
b.    Appropriate statutory penalties for each violation of the FCRA;
c.    Actual damages;
d.    Punitive damages;
e.    Reasonable attorney's fees and the costs of this litigation;
f.    Pre-judgment and post-judgment interest at the legal rate;
g.    Appropriate equitable relief, including the correction of Plaintiff's credit reports; and
h.    Such other relief as the Court deems equitable, just, and proper.

## Count IV— Debt Collector Defendants – NCS, CCS FCO and ProCollect Violations of the FDCPA

135.    Plaintiff incorporates the paragraphs prior to Count I as though fully set forth herein.

136.    The foregoing acts and omissions of the Debt Collector Defendants constitute violations of the FDCPA including but not limited to violation of 15 U.S.C. §1692e and §1692f by attempting to collect a debt from Plaintiff that he does not owe by sending him a collection notice for a debt that falsely represented the character, amount, and legal status of the alleged debt.

137.    The foregoing acts and omissions of Debt Collector Defendants constitute violations of the FDCPA including but not limited to violation of 15 U.S.C. §1692e and §1692f by publishing false credit information about Plaintiff to the credit reporting agencies; misrepresenting the amount, status and character of Plaintiff's alleged collection in the credit information provided to the credit reporting agencies, and attempting to collect a debt from Plaintiff that he does not owe.

WHEREFORE, Plaintiff requests that this Honorable Court award:

a.    Statutory damages of an amount not to exceed $1,000 dollars total, for

      all violations, under 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages under 15 U.S.C. § 1692k(a)(1);

c.    Reasonable attorney's fees and costs of the action under 15 U.S.C. § 1692k(a)(3); and

d.    Such other or further relief as the Court deems just proper.

### COUNT V – Debt Collector and Original Creditor Defendants
### TEXAS DEBT COLLECTION ACT
### Violation of Tex. Fin. Code Ann. §§ 392.304(a)(8) & 392.304(a)(19)

138.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

139.    A debt collector may not use any fraudulent, deceptive, or misleading representation that "misrepresent[s] the character, extent, or amount of a consumer debt…." *See* TEX. FIN. CODE § 392.304(a)(8).

140.    A debt collector may not use "any other false representation or deceptive means to collect a debt…." *See* TEX. FIN. CODE § 392.304(a)(19).

141.    For the same reasons that Credit Management is liable under §§ 1692e, 1692e(2)(A) of the FDCPA in Count I above, it is also liable under §§ 392.304(a)(8) & 392.304(a)(19) of the Texas Finance Code.

142.    The Debt Collector and Original Creditor Defendants are liable under §§ 392.304(a)(8) for misrepresenting the character, extent and amount of the debt as collectible, when in fact it was the product of identity theft. The Debt Collector and Original Creditor Defendants further made false representations or deceptive means to collect the debt from Plaintiff and are thus liable under §§ 392.304(a)(8) & 392.304(a)(19).

143.   "A person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." *See* TEX. FIN. CODE § 392.403(a)(1)-(2). "A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs." *See* TEX. FIN. CODE § 392.403(b).

WHEREFORE, Plaintiff requests that this Honorable Court award:

a.      Injunctive relief to prevent or restrain any violations of the TDCA as provided TEX. FIN. CODE § 392.403(a)(1);

b.      Actual damages under TEX. FIN. CODE § 392.403(a)(2);

c.      Reasonable attorney's fees, litigation expenses and costs of suit under TEX. FIN. CODE § 392.403(b);

d.      Exemplary damages against the Comcast Defendants only, and

e.      Such other or further relief as the Court deems just proper.

### COUNT VI – Debt Collector and Original Creditor Defendants
**TEXAS DEBT COLLECTION ACT**
**INJUNCTIVE RELIEF TO STOP DEBT COLLECTION ACTIVITIES**

144.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

145.   The Original Creditor Defendants have the Debt Collector Defendants claiming that Plaintiff, an identity theft victim, is responsible for the repayment of debts related to apartment leases for units he never lived or insurance he did not receive. Plaintiff prays for injunctive relief to stop all future such activities.

146.     Original Creditor Defendants or Debt Collector Defendants Credit Management have dunned Plaintiff for these accounts, illegally pulled his credit reports, and posted collection accounts on this credit reports as part of their debt collection activities. Plaintiff prays for injunctive relief to stop all future such activities.

WHEREFORE, Plaintiff requests that this Honorable Court award:

a.     Injunctive relief to prevent or restrain any violations of the TDCA as provided TEX. FIN. CODE § 392.403(a)(1);

c.     Reasonable attorney's fees, litigation expenses and costs of suit under TEX. FIN. CODE § 392.403(b); and

d.     Such other or further relief as the Court deems just proper.

## COUNT VII– Debt Collector and Original Creditor Defendants
## FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681 et. seq.

147.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

148.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

**(f) Certain use or obtaining of information prohibited.** – A person shall not use or obtain a consumer report for any purpose unless –
(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

See 15 U.S.C. § 1681$b$ (f).

WHEREFORE, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Debt Collector Defendants or Original Creditor Defendants;
b.  Appropriate statutory penalties for each violation of the FCRA;
c.  Actual damages;
d.  Punitive damages;
e.  Reasonable attorney's fees and the costs of this litigation;
f.  Pre-judgment and post-judgment interest at the legal rate;
g.  Appropriate equitable relief; and
h.  Such other relief as the Court deems equitable, just, and proper.

## JURY

**Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.**

Dated: November 3, 2022                     Respectfully submitted,


                                            By:  /s/ Tod A. Lewis

Richard J. Doherty (6226707)          Tod A. Lewis (Texas Bar #24091999)
James M. Smith (6285183)              Tod Lewis Law, PLLC
Doherty Smith, LLC                    13267 Darwin Lane
9501 W. 144th Place, Suite 101        Austin, TX 78729-6464
Orland Park, IL 60462                 512-739-0390 (cell)
Phone: 866.825.6787                   1-737-205-1291 (facsimile)
Fax: 312.319.4084                     Tod@texasfaircredit.com
RDoherty@dohertysmith.com
JSmith@dohertysmith.com               Attorneys for Plaintiff

# **VERIFICATION**

Plaintiff Marcus B. Goswick declares as follows:

1.      I am the Plaintiff in this Verified Complaint.

2.      I reside in Comal County, Texas.

3.      I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4.      I verify and affirm under penalty of perjury under the laws of the United States of America and the State of Texas that the factual averments in this Verified Complaint concerning myself and my activities are true and correct pursuant to 28 U.S.C. § 1746.


Executed on:_____11/4/2022_____


*Marcus Brent Goswick*
ID gYiL25peXPwG9E8JeEha5ZDG
_____
/s/ Marcus B. Goswick, Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of November 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all users.

By: <u>/s/ Tod A. Lewis</u>

# eSignature Details

---

**Signer ID:**       **gYiL25peXPwG9E8JeEha5ZDG**
Signed by:           Marcus Brent Goswick
Sent to email:       b.goswick@yahoo.com
IP Address:          165.225.32.105
Signed at:           Nov 4 2022, 10:14 am CDT